IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARREN M. P.,[1] | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 20-cv-534-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, | ) |
|         Defendant. | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for SSI in March 2018, alleging he became disabled on February 29, 2016 (Tr. 180). After holding an evidentiary hearing, ALJ Jason R. Yoder denied the application on May 24, 2019 (Tr. 29-37). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

Page **1** of **14**

1. The RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of treating physician's assistant Micah L. Oakley.

2. The Appeals Council erred in determining that additional evidence submitted by the Plaintiff did not show a reasonable probability that it would change the outcome of the decision.

## **Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

In his opinion, ALJ Yoder followed the five-step analytical framework described above. He determined that Plaintiff had not engaged in substantial gainful activity since March 5, 2018, the date on which his application was submitted. The ALJ found that Plaintiff had severe impairments of lumbar spine degenerative disc disease, obesity, and osteoarthritis/degenerative joint disease. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following exceptions and/or qualifications: he can lift and carry

ten pounds occasionally and less than ten pounds frequently; he can sit for about six of eight hours, and stand/walk for about six of eight hours; he can never climb ladders, ropes or scaffolding, but can occasionally climb ramps or stairs; he can never crawl, he can occasionally balance, stoop, kneel, and crouch; and he must avoid concentrated exposure to extreme cold, vibration, and dangerous hazards such as exposed mechanical machinery and unprotected heights.

The ALJ found that Plaintiff had no past relevant work, and determined he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

**1. Agency Forms**

Plaintiff was born in 1978 and was 37 years old on the alleged date of onset (Tr. 174). Plaintiff has prior work as a cashier/stocker and as a dishwasher (Tr. 204). In his disability report dated March 5, 2018, Plaintiff listed the following as conditions that limit his ability to work: herniated disc in back, inability to lift more than ten pounds, inability to stand or sit long due to pain, and inability to go grocery shopping due to severe pain (Tr. 203, 211).

**2. Evidentiary Hearings**

An evidentiary hearing was held on May 9, 2019 wherein Plaintiff was accompanied by a non-attorney representative (Tr. 44).

Plaintiff testified he began seeking treatment for back pain in 2016 and was referred for physical therapy. Plaintiff indicated he received a list of physical therapy exercises that he

continues to do about three times a week, which relieve some pain (Tr. 56). Plaintiff currently takes Gabapentin twice per day, but testified it helps "very little" (Tr. 57). Plaintiff is also currently prescribed Norflex, a muscle relaxer, and takes it once or twice per day (Tr. 57-58).

Plaintiff testified he experiences back pain "all day, every day" (Tr. 59). Plaintiff indicated he can stand or walk for five to ten minutes before needing to rest, and can sit for about half-an-hour before needing to move around (Tr. 59-60). Plaintiff testified a doctor restricted him to lifting no more than ten pounds and he has difficulty bending, stooping, and kneeling (Tr. 60, 62).

Plaintiff testified he does some cooking and cleaning around his house (Tr. 51). More specifically, Plaintiff indicated he is able to cook, but needs to sit down every ten to fifteen minutes (Tr. 51). Plaintiff also does some grocery shopping, but indicated in the last four of five months he has needed to use a motorized cart (Tr. 52-53). Plaintiff also uses a riding lawn mower to mow both his and his parents' lawns (Tr. 68).

A vocational expert ("VE") also testified (Tr. 70). The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings (Tr. 71). The VE testified that this person could do work at the sedentary exertional level. She also identified jobs that this person could do at the light exertional level with a 50% reduction based on the person's weight restrictions.

### 3. Relevant Medical Records

On August 13, 2015, prior to his alleged disability onset date, Plaintiff was seen by PA-C Oakley. PA-C Oakley assessed Plaintiff as having lower back pain, noting tenderness over the LS spinal musculature, and ordered imaging (Tr. 289-291).

Plaintiff did not complete the ordered MRI because he was unable to lie still for the test

(Tr. 271).

Plaintiff saw PA-C Oakley again on September 3, 2015 and October 2, 2015 for complaints of lower back pain (Tr. 285-288).

On February 2, 2016, Plaintiff was seen by PA-C Oakley for complaints of worsening lower back pain. Plaintiff indicated he wakes up every few hours with numbness, tingling, and burning, and stated he could not work anymore because he could not lift or stand for a long period (Tr. 282). PA-C Oakley diagnosed Plaintiff with paresthesia, lower back pain, and lumbar radiculopathy (Tr. 283). PA-C Oakley issued the following restrictions: no lifting greater than ten pounds; minimal bending at the waist; and no standing longer than one hour without at least a fifteen-minute break to sit and stretch (Tr. 283-284).

Plaintiff underwent an MRI on February 23, 2016, which was interpreted by Hisham T. Youssef, MD. Dr. Youseff observed: mild annular disc bulge with small left neural foraminal disc protrusion impinging on the left nerve root at L5-S1; minimal annular disc bulge with mild spinal stenosis at L4-5; bilateral neural foraminal stenosis which was moderate from L4-5, severe on the left at L5-S1, and moderate on the right at L5-S1; and degenerative desiccation to the L5-S1 disc (Tr. 292-293).

Plaintiff was next seen by PA-C Oakley on March 1, 2016 to again address his lower back pain (Tr. 280-281). PA-C Oakley noted no abnormalities upon physical examination, and diagnosed Plaintiff with lower back pain, lumbar radiculopathy, and a herniated lumbar disc (Tr. 280-281).

On April 7, 2016, Plaintiff was seen by Keith Burchill, M.D., a rehabilitation specialist, and examination revealed tenderness to palpation in Plaintiff's lower back (Tr. 381). Dr. Burchill

diagnosed Plaintiff with lumbar facet syndrome and stenosis of the lateral recess of the lumbar spine (Tr. 381). Dr. Burchill noted that Plaintiff's imaging did not match his clinical picture and that Plaintiff showed no signs of radiculopathy, had no weakness or gait disturbance, and was not a surgical candidate at that time (Tr. 381). Dr. Burchill recommended physical therapy (Tr. 381).

Plaintiff had an initial physical therapy evaluation on April 19, 2016, and attended physical therapy on April 21, 22, and 25, 2016, and May 2, 20216 (Tr. 354, 364-369).

Plaintiff returned to Dr. Burchill on May 12, 2016. Dr. Burchill noted Plaintiff was discharged from physical therapy for skipping three appointments; however, Plaintiff indicated physical therapy had been helpful and he wished to resume the same. Plaintiff again had tenderness to palpation, but no other abnormalities were noted. Dr. Burchill continued his previous assessments of lumbar facet syndrome and stenosis of the lumbar spine (Tr. 383-387).

Plaintiff began physical therapy again on May 17, 2016 (Tr. 341-344). Plaintiff attended physical therapy six times between May 19, 2016 and June 9, 2016 (Tr. 330-340).

On July 26, 2016, Plaintiff returned to Dr. Burchill for back pain (Tr. 388-392). Dr. Burchill observed noted tenderness to palpation over Plaintiff's L4/L5 or sacroiliac joints, and tenderness over the right quadratus lumborum muscle (Tr. 391). Dr. Burchill diagnosed Plaintiff with myofascial muscle pain, stenosis of lateral recess of lumbar spine, right median nerve neuropathy, and lumbar facet syndrome (Tr. 391-392). Dr. Burchill noted Plaintiff was managing his back pain with Vicodin prescribed by PA Oakley, and taking at most one pill per day (Tr. 388). Dr. Burchill also noted there was "no need for interventional procedures" and Plaintiff had "declined all of them anyway" (Tr. 391).

Plaintiff was seen by PA-C Oakley on May 2, 2017. PA-C Oakley determined that

Plaintiff had lower back pain and a herniated lumbar disc, but noted no abnormalities. Plaintiff was taking Norco for pain, and indicated he sometimes took extra medication when his pain worsened. PA-C Oakley increased Plaintiff's dosage of Norco, allowing Plaintiff to take up to three tablets per day (Tr. 301-303).

Plaintiff followed up with PA-C Oakley on September 1, 2017 and, on examination, she noted decreased range of motion, tenderness, boney tenderness, and pain in Plaintiff's right shoulder and lumbar back (Tr. 305). PA-C Oakley diagnosed Plaintiff with chronic bilateral lower back pain without sciatica (Tr. 305). PA-C Oakley continued Plaintiff on his current medications, and instructed him not to drive, climb, or use heavy equipment for six to eight hours after taking Norco (Tr. 305). Plaintiff next saw PA-C Oakley on January 4, 2018, for complaints of worsening lower back pain (Tr. 306). On examination, PA-C Oakley noted that Plaintiff exhibited decreased range of motion, tenderness, bony tenderness, and pain in his lumbar back (Tr. 307). PA-C Oakley diagnosed Plaintiff with lumbar facet syndrome, stenosis of lateral recess of lumbar spine, and chronic lower back pain without sciatica (Tr. 307-308). PA-C Oakley ordered another MRI, which was completed on January 11, 2018 (Tr. 308, 314-315). Richard Berger, M.D., interpreted the MRI and observed left foraminal disc bulge at the lumbosacral junction causing severe left L5 foraminal stenosis (Tr. 314).

On March 28, 2018, Plaintiff underwent an initial evaluation by Yogesh B. Malla, M.D. (Tr. 16-25). Plaintiff complained that his "lower back pain is unbearable all day long" (Tr. 16). Dr. Malla's impression was that Plaintiff suffered from lumbar spinal stenosis without neurogenic claudication, lumbosacral spinal stenosis, lumbar disc degeneration, lumbosacral facet joint arthropathy, and lumbosacral facet joint arthropathy (Tr. 23).

Plaintiff again reported back pain to PA-C Oakley on July 5, 2018 (Tr. 395-397). PA-C Oakley diagnosed Plaintiff with lumbar facet syndrome and stenosis of the lateral recess of the lumbar spine (Tr. 396). When Plaintiff returned to PA-C Oakley on January 7, 2019, no abnormal physical findings were noted, and Plaintiff was diagnosed with lumbar facet syndrome and stenosis of lateral recess of lumbar spine (Tr. 399). PA-C Oakley continued Plaintiff on Mobic, increased the prescription for Gabapentin, and added a prescription for Norflex (Tr. 399).

PA-C Oakley completed a residual functional capacity questionnaire and medical source statement on April 5, 2019 (Tr. 406-409). PA-C Oakley stated that Plaintiff was diagnosed with chronic lower back pain secondary to lumber facet syndrome, stenosis, and disc herniation. He indicated that Plaintiff's prognosis indicated a continued decline and opined that Plaintiff's symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks. PA-C Oakley opined that Plaintiff was incapable of even "low stress" jobs (stress meaning physical activity); could walk less than one block without rest or severe pain; could sit for 30 minutes before needing to get up; could stand for one hour before needing to sit or walk around; could both sit and stand/walk for about four hours in a total eight hour work day; would need to be able to walk every 90 minutes for five minutes at a time; would need a job that permits shifting positions at will from sitting, standing, or walking; would need to take unscheduled breaks every two to four hours that would last 10 to 15 minutes each; could only rarely lift less than 10 pounds and could never lift 10 pounds or more; could rarely twist and could never stoop, crouch, climb ladders or stairs; and would miss more than four days per month due to his impairments or treatments. Plaintiff also could not work or drive within six hours of taking Norflex.

**4. Non-Examining State Agency Consultant Physicians – Vidya Madala, M.D. and**

**Lenore Gonzalez, M.D.**

Dr. Madala reviewed Plaintiff's treatment records in April 2018 and opined that Plaintiff could: (1) lift and carry up to 10 pounds frequently; (2) stand or walk six hours in an eight-hour work day; (3) sit six hours in a work day; (4) occasionally climb ramps and stairs; (5) never climb ladders, ropes, or scaffolds; (6) occasionally balance, stoop, kneel, and crouch; (7) never crawl; and (8) work in environments without exposure to vibration and hazards such as moving machinery and unprotected heights (Tr. 80-88).

Dr. Gonzalez reviewed Plaintiff's updated records in June 2018 and agreed with Dr. Madala's opinion, but added that Plaintiff should also avoid concentrated exposure to extreme cold (Tr. 90-98).

## Analysis

Plaintiff first argues that the ALJ failed to properly weigh the opinion of treating Physician's Assistant Micah Oakley. In support of his position, Plaintiff asserts the ALJ rejected PA-C Oakley's functional capacity opinions despite objective evidence in the record to support Oakley's opinions. Plaintiff asserts PA-C Oakley's diagnoses for Plaintiff, including lumbar facet syndrome, a herniated disc, and stenosis of the lateral recess of the lumbar spine, are consistent with Plaintiff's most recent MRI taken on January 11, 2018. Plaintiff further argues the ALJ mischaracterized the evidence in asserting Plaintiff reported stable, unchanged symptoms to contend PA-C Oakley's opinion was unsupported by the objective record. Plaintiff argues that he complained his pain was worsening on various occasions, including examinations on January 4, 2018 and March 28, 2018. Although Plaintiff concedes he indicated his pain was "stable" on January 7, 2019, Plaintiff argues that a person can be "stable" while experiencing debilitating pain.

Plaintiff also argues the ALJ improperly mischaracterized Plaintiff's treatment as sporadic, remarking Plaintiff saw PA-C Oakley 10 times between August 2015 and January 2019, and noting Plaintiff also went to physical therapy 12 times, saw Dr. Burchill three times, had two MRIs, and saw an interventional pain specialist during this time period.

Finally, Plaintiff contends PA-C Oakley's order that Plaintiff refrain from working or driving within six hours of taking Norflex, a medication he prescribed for Plaintiff to be taken two times a day as needed, would clearly contradict Plaintiff's ability to work eight hours a day, five days a week. Plaintiff asserts the ALJ failed to mention this issue in his decision.

Defendant asserts the ALJ assessed a highly restrictive RFC limiting Plaintiff, who was just 37 years old at his alleged onset of disability, to a reduced range of sedentary work. Defendant argues that based upon examinations finding normal functioning aside from tenderness to palpation and moderately restricted range of motion in the lower back, the ALJ was not required to find any greater limitation. Defendant argues the ALJ reasonably weighed the persuasiveness of the medical opinion evidence, which included prior administrative medical findings from state agency medical consultations Vidya Madala, M.D. and Lenore Gonzalez, M.D. Defendant remarks the ALJ found the opinions of Dr. Madala and Dr. Gonzalez highly persuasive because they were well supported by the doctor's explanations and consistent with other evidence in the record, relying on Plaintiff's imaging and relatively normal physical findings. Defendant also argues the ALJ was permitted to consider Plaintiff's ability to sit at the hearing and Plaintiff's poor work history in rendering his decision. Finally, Defendant argues it was reasonable for the ALJ to find there was no apparent basis for PA-C Oakley's opinion that Plaintiff would miss work four or more days per month. Defendant remarks the ALJ noted Plaintiff did not receive treatment

four or more times per month, and the ALJ considered the lack of support for a disabling level of absences.

An ALJ must consider the following factors when evaluating the medical opinion from a medical source: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important factors are the supportability and consistency of the opinion.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Although the ALJ must consider all of these factors, she need not discuss each factor in her opinion; the ALJ need discuss only the supportability and consistency factors.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Here, the ALJ indicated he found PA-C Oakley's opinion unpersuasive because it was not supported in the objective record.  The ALJ stated that Plaintiff's physical examinations showed good range of motion, normal reflexes, negative straight leg raises, and good muscle tone without atrophy.  The ALJ also noted Plaintiff is not a surgical candidate, his imaging does not match his clinical picture, he was able to sit through the hearing without changing positions or appearing uncomfortable, he has a poor work history, and generally reports stable, unchanged symptoms.  The ALJ found that for these reasons, PA-C Oakley's opinion is unsupportable and markedly inconsistent with the substantial evidence in the record.

The Court finds the ALJ mischaracterized the evidence in finding PA-C Oakley's opinion unsupportable.  Although many of Plaintiff's physical examinations were relatively normal,

Plaintiff consistently demonstrated tenderness on palpation to his lower back, and PA-C Oakley diagnosed him with lumbar facet syndrome and other conditions related to lower back pain on numerous occasions. Moreover, Plaintiff's most recent MRI findings evidenced left foraminal disc bulge at the lumbosacral junction causing severe left L5 foraminal stenosis. The ALJ did not appear to take this finding into consideration. While an ALJ is not required to discuss every piece of evidence in the record, the ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Further, Dr. Burchill's April 7, 2016 note that Plaintiff's imaging does not match his clinical picture, on which the ALJ relied, does not take into account these subsequent MRI findings. Also, the ALJ relied on his impression that Plaintiff reported stable, unchanged symptoms. Although it is not evident that Plaintiff consistently reported stable symptoms (he often complained of increasing pain), even if he did, "stable" does not shed any light on the nature and severity of a claimant's overall condition or RFC. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). Finally, the ALJ failed to address Plaintiff's inability to work or drive within six hours of taking Norflex, which he testified he takes once or twice a day, as prescribed by PA-C Oakley.

The ALJ's incomplete and inaccurate analysis of the medical evidence undermines the validity of his rejection of PA-C Oakley's opinion. Accordingly, remand is required.

The Court stresses, however, that this Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

In light of the remand of this matter to the ALJ, the Court declines to consider the second issue, whether the Appeals Council erred in determining that additional evidence submitted by Plaintiff did not show a reasonable probability that it would change the outcome of the decision, as moot.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: August 4, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**